UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NATARAJAN VENKATARAM

                                                              11 CV 6503 (RPP)
                             Petitioner,            11 CV 8005 (RPP)
                                                              06 CR 102   (RPP)

      -against-

                                                                **OPINION AND ORDER**

UNITED STATES OF AMERICA,
                             Respondent.
------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Pursuant to 28 U.S.C. § 2255, Natarajan R. Venkataram ("Venkataram") brings a motion in Case No. 11 CV 6503 to vacate, set aside, or correct the sentence imposed on July 11, 2008 after he pleaded guilty to participating in a conspiracy to commit theft concerning a federal program and to commit money laundering, in violation of 18 U.S.C. § 371, committing a theft concerning a federal program, in violation of 18 U.S.C. § 666(a)(1)(A), and committing money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(a)(2)(B)(i).  See United States v. Venkataram, No. 06 CR 102 (S.D.N.Y. July 11, 2008).  In his motion, Venkataram challenges his sentence on the grounds that his Sixth Amendment right to effective assistance of counsel and his Fifth Amendment right to due process were violated.  (Pet'r's Mem. in Supp. of Mot. to Vacate, Set Aside, or Correct Sentence ("Pet'r's Mem."), Sept. 12, 2011, 11 CV 6503, ECF No. 2.)  In a supplemental memorandum filed on December 22, 2011, Venkataram raised a number of additional claims for § 2255 relief.  (Pet'r's Supplemental Mem. in Supp. of § 2255 Motion ("Pet'r's Supplemental Mem."), ECF No. 7.)

      On February 5, 2012, the Government filed a memorandum in opposition to Venkataram's petition, in which it contends that Venkataram's claims are without merit and

1

should be denied without a hearing.  (Gov't Mem. in Opp'n to Mot. To Vacate, Set Aside, or Correct a Sentence ("Gov't Mem."), ECF No. 9.)  Venkataram filed a reply memorandum with the Court on March 5, 2013.  (Pet'r's Reply to Opp'n, ECF No. 22.)

In a separate action, in Case No. 11 CV 8005, Venkataram seeks coram nobis relief for errors concerning the Court's order of restitution in the same criminal case.[1]  (Compl., Nov. 7, 2011, 11 CV 8005, ECF No. 1.)  On March 14, 2012, the Government filed a memorandum in opposition to Venkataram's request.  (Gov't Mem. in Opp'n to Coram Nobis, ECF No. 11.)

For the reasons stated below, Venkataram's § 2255 Motion is DENIED, and Venkataram's petition for a writ of error coram nobis is also DENIED.

## I.   FACTUAL BACKGROUND[2]

### A.  Criminal Proceedings

On June 21, 2006, the Government filed an indictment charging Venkataram in sixteen counts.  (Superseding Indictment (the "Indictment") at 1-33, June 21, 2006, 06 CR 102, ECF No. 24.)  Count One charged Venkataram with conspiracy to commit theft concerning a federal program and to commit money laundering, in violation of 18 U.S.C. § 371.  (Id. at 1-17.)  Count Two charged Venkataram with theft concerning a federal program, in violation of 18 U.S.C. § 666(a)(1)(A).  (Id. at 18-19.)  Counts Three through Sixteen charged Venkataram with money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(a)(2)(B)(i).  (Id. at 19-33.)  The Indictment also contained forfeiture allegations related to the federal program fraud violations

---

[1] Venkataram, pro se, initially filed this action under 42 U.S.C. § 1983 seeking monetary damages from the Government, but this Court has interpreted Venaktaram to be seeking coram nobis relief, to the extent that Venkataram intended to challenge the Court's order of restitution. (Order to Answer, Jan. 6, 2012, 11 CV 8005, ECF No. 8.)

[2] Because the factual and procedural history of this case was discussed at length in the Court's Opinion dated January 23, 2013, (see Opinion and Order, 11 CV 6503, ECF No. 19;11 CV 8005, ECF No. 17), the Court recounts the history of this case only as is necessary to dispose of the pending issues.

alleged in Counts One and Two and the money laundering violations alleged in Counts Three through Sixteen. (Id. at 33-37.) The Indictment alleged that Venkataram, with other defendants, stole more than $9 million from the Office of the Chief Medical Examiner for the City of New York (the "OCME") and laundered the stolen money in various ways. (Id. at 9-36.) Venkataram, formerly the director of the OCME's Management Information Systems department, was alleged to have been the mastermind of the scheme, which primarily involved awarding OCME computer services contracts to companies that were not actually providing services, or were providing only minimal services, for the purpose of stealing money from the OCME. (Id.)

On October 30, 2007, Venkataram pleaded guilty to all counts of the Indictment without the benefit of a plea agreement. (See Plea Hr'g Tr. ("Plea Hr'g") at 2, Oct. 30, 2007, ECF No. 692.) The plea proceeding complied in all respects with Rule 11 of the Federal Rules of Criminal Procedure, and Venkataram's plea was accepted after Venkataram acknowledged his guilt as to each of the sixteen counts of the Indictment. (See id. at 1-53.)

### B. Sentencing Proceedings

On March 21, 2008, the Court held a Fatico hearing, during which the Government presented evidence about the details of Venkataram's scheme. The Government's sole witness, the Department of Information attorney who had investigated Venkataram's case, testified that approximately $9 million was diverted to Venkataram because of his scheme and that this was a reasonable estimate of the OCME's loss. (See Fatico Tr. at 10-193, March 21, 2008.) Venkataram objected to the loss calculation and, at several points, expressed interest in calling Muhammed Naseh, a co-defendant in the case, to testify on the issue of loss. (See Order, July 10, 2008, 06 CR 102, ECF No. 728.) The Court ultimately denied Venkataram's request after

his counsel failed to submit an offer of proof in writing. (Id.)

The Court proceeded to sentencing on July 11, 2008. During sentencing proceedings, Venkataram conceded that Guidelines enhancements were warranted for abuse of trust, aggravating role in the offense, and committing money laundering under 18 U.S.C. § 1956. (See Sentencing Hr'g Tr. ("Sentencing Hr'g") at 146, July 11, 2008, ECF No. 733.) Defense counsel argued that Venkataram deserved a three-level reduction for acceptance of responsibility and a downward departure due to diminished capacity and extraordinary acceptance of responsibility, and that sentencing enhancements for sophisticated means and sophisticated laundering should not apply. (Id. at 134-45.) The Court found that enhancements applied for both the use of sophisticated means and engaging in money laundering and that no downward departure was warranted, but agreed that Venkataram deserved credit for acceptance of responsibility and granted a two-level reduction. (Id. at 198-200.) The Court then sentenced Venkataram to concurrent terms of imprisonment of 60 months on Count One, 120 months on Count Two, and 180 months of each of Counts Three through Sixteen, which it ordered to be followed by concurrent terms of five years' supervised release. (Id. at 202-04.) The Court also ordered that Venkataram pay a $50,000 fine, make restitution in the amount of $2,970,072, forfeit $2,970,072, and pay a mandatory $1,600 special assessment.[3] (Id. at 204-12.)

### C. The Appeal

Following his conviction, Venkataram filed an appeal to challenge his sentence, but not his guilty plea. In his appeal, Venkataram argued, among other things, that this Court erroneously calculated the applicable Sentencing Guidelines range in his case. United States v.

---

[3] Prior to Venkataram's Sentencing Hearing, the Government had sent the Court a letter stating that the Government had recovered $6.12 million in funds that Venkataram embezzled and wire-transferred to Visualsoft Technologies. (See Letter from the Gov't at 7, July 9, 2008, ECF No. 27.) The Court applied this reduction to the total calculated loss amount to reach the amounts of restitution and forfeiture.

Venkataram, 356 Fed. Appx. 541, 542-43 (2d Cir. 2009). Specifically, Venkataram argued that the Court erred in calculating the loss amount resulting from his crimes; denying him the opportunity to call Naseh to testify on the issue of loss; declining to award an additional one-level reduction for acceptance of responsibility when calculating the applicable Guidelines range; relying on the same conduct in applying the sophisticated means and sophisticated laundering enhancements; and applying the abuse of trust enhancement to his sentence. Id. On December 16, 2009, the Second Circuit, in a summary order, rejected each of Venkataram's claims, with the exception of the claim that the Court had mistakenly imposed a five-year term of supervised release,[4] and affirmed Venkataram's sentence of imprisonment. Id. The Supreme Court denied Venkataram's petition for a writ of certiorari on December 6, 2010. Venkataram v. United States, 131 S.Ct. 809 (2010).

## II. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Venkataram, proceeding pro se, has petitioned the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In his petition, Venkataram asserts numerous separate grounds for relief based on the ineffective assistance of counsel in violation of the Sixth Amendment. (Pet'r's Mem. at 7-63.) His petition alleges that the seven attorneys he privately retained to represent him in his criminal case—Mark Potashnick, Ronald Rubinstein, Sabrina Shroff, Gerald Shargel, Alan Seidler, James Neville, and Norman Trabulus—all failed to provide effective assistance in various ways. (Id.) Venkataram also asserts eight separate grounds for relief based on having been denied procedural due process in violation of the Fifth Amendment. (Id. at 63-90.) In a supplemental memorandum filed on December 22, 2011, Venkataram also

---

[4] The Second Circuit agreed with Venkataram's claim that this Court had mistakenly imposed a five-year term of supervised release when the statutory maximum was three years.

raised seven additional claims regarding the return of the $6.12 million that Venkataram stole and had wire-transferred to India. (Pet'r's Supplemental Mem. at 1-11.)

### A. Legal Analysis

#### 1. The Law Governing Petitions Under 28 U.S.C. § 2255

28 U.S.C., § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Relief is available under § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." U.S. v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation mark and citation omitted). The Court is mindful that Venkataram is proceeding pro se, and thus his submissions will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995), and read to "raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted).

Absent a fundamental miscarriage of justice, a federal prisoner who fails to raise an issue on direct appeal cannot subsequently raise the issue in a § 2255 petition, unless he can show cause for his failure to raise the issue on appeal. See Murray v. Carrier, 477 U.S. 478, 491 (1986); Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999). Further, a federal prisoner may not employ a habeas petition to relitigate issues that have been raised and considered on direct appeal. See United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001). Reconsideration is only permitted where there has been an intervening change in the law and the new law would have resulted in a different disposition. See id.

6

### 2. The Law Governing Ineffective Assistance of Counsel Claims

To establish a claim for ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance was deficient if it "fell below an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

In addition to demonstrating an unreasonable error by counsel, a petitioner must show that the deficiency in counsel's performance had an effect on the result; that is, that the error was prejudicial to the petitioner. Id. at 691-96. A petitioner demonstrates prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687.

### B. DISCUSSION

#### 1. Claims Relating to Conduct of Attorneys, Decisions by the Court, and Other Matters Preceding Guilty Plea

Venkataram raises numerous issues related to pre-pleading events, including all of the claims directed at his first four attorneys and most of his due process claims. (Pet'r's Mem. at 4-43, 63-76, 84-90.) These claims have no merit because they were waived by virtue of his knowing and voluntary guilty plea. See Lebowitz v. United States, 877 F.2d 207, 209 (2d Cir. 1989) ("[A] defendant who knowingly and voluntarily enters a guilty plea waives all nonjurisdictional defects in the prior proceedings."). It is a settled rule that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process," Tollett v.

7

Henderson, 411 U.S. 258, 267 (1973), and therefore, a plea unconditionally waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of the plea. Id.; see also Hill v. Lockhart, 474 U.S. 52, 56 (1985) (an ineffective assistance claim within the context of a guilty plea can only be established where "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial").

Venkataram presents no evidence that his attorneys' conduct affected the voluntariness of his plea; rather, he concedes in his § 2255 petition that pleading guilty to the charges against him was the most reasonable strategy available to him. (Pet'r's Mem. at 30.) With no evidence that the assistance his counsel provided affected the outcome of the plea process, Venkataram's claims related to the pre-pleading conduct of his attorneys fail. Similarly, Venkataram's due process claims related to events that occurred prior to his guilty plea were waived by virtue of the plea and cannot be the basis of a § 2255 petition.

In addition to having been waived by Venkataram's guilty plea, Venkataram's claims regarding pre-pleading events also fail on the merits. For example, Venkataram alleges his attorneys were ineffective for failing to obtain Venkataram's release on bail. (Pet'r's Mem. at 10, 16.) However, courts have considerable discretion in determining bail conditions, see United States v. Salerno, 481 U.S. 739, 742 (1987), and an attorney can do no more than advocate on behalf of his or her client to seek the client's release. The record in this case makes clear that Venkataram's attorneys repeatedly sought Venkataram's release (see Gov't Mem. at 46-47), and the fact that they could not secure his release on bail, without more, does not constitute ineffective assistance of counsel.

Venkataram also alleges that a Speedy Trial violation occurred and makes several claims

8

of error on that basis. First, he argues that his attorneys were ineffective for failing to move to dismiss the case on Speedy Trial grounds. (Pet'r's Mem. at 12-16, 23, 35-36, 38.) Second, he alleges that the Court violated his due process rights by failing to dismiss the indictment. (Pet'r's Mem. at 64-69.) Both claims are meritless because there was no Speedy Trial violation. Section 3161 of Title 18 of the United States Code provides that an information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which that individual was arrested in connection with such charges. 18 U.S.C. § 3161(b). Section 3161 also provides that the Court may exclude a period of delay in computing the time within which an information or indictment must be filed, in the interest of justice. 18 U.S.C. § 3161(h)(7). In this case, Magistrate Judge Gorenstein properly excluded thirty days in computing the time within which an indictment was required to be filed, based on Venkataram's consent to the exclusion. (See Order to Continue in the Interest of Justice, Jan. 6, 2006, 06 CR 102, ECF No. 8).

Venkataram additionally alleges that Ms. Shroff was ineffective for failing to object to the seizure of funds in various bank accounts, which deprived Venkataram of funds needed to retain new counsel and violated his right to counsel of choice. (Pet'r's Mem. at 21-23, 84-85.) This claim is meritless because "neither the Fifth nor the Sixth Amendment to the Constitution require Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees." United States v. Monsanto, 491 U.S. 600, 614 (1989). The Second Circuit has held that if the Government has restrained all of a defendant's assets such that he cannot afford the lawyer of his choice, he is entitled to a hearing on the issue of probable cause for the forfeiture. United States v. Monsanto, 924 F.2d 1186 (2d Cir. 1991). However, the evidence in this case indicates that Venkataram had additional funds, separate from these bank

accounts, with which he repeatedly retained new attorneys. (See Gov't Mem. at 53-54.) He also had funds available to him that allowed him to present a check in the amount of $244,695.57 to this Court during the sentencing proceedings to pay part of the restitution he owed in this case. (See Sentencing Hr'g at 129.) Because Venkataram could not have demonstrated that the funds in the seized bank accounts were the only assets he owned and was able to retain seven private attorneys with his own funds, as well as an eighth attorney on appeal, he was not entitled to a Monsanto hearing. Accordingly, Ms. Shoff's failure to challenge the seizure warrants did not deprive Venkataram of his right to counsel of choice.[5]

Venkataram also argues that several of his attorneys had conflicts of interest. First, he alleges that two of his attorneys—Ms. Shroff and Mr. Shargel—had conflicting interest in representing him. (Pet'r's Mem. at 24-28.) Second, he alleges that Mr. Shargel and Mr. Seidler, had actual conflicts of interest that violated his Sixth Amendment right to counsel. (Id. at 43.) Specifically, Venkataram alleges Ms. Shroff had a conflict of interest because she suggested Venkataram retain her husband's law firm to represent him in a civil suit; Mr. Shargel had a conflict of interest because he was simultaneously representing other defendants in "high-profile" cases and failed to pursue a particular defense strategy; and Mr. Seidler had a conflict of interest because he allegedly shared fees with a nonlawyer. (Id. at 24-28, 43) None of the facts Venkataram alleges, without more, would constitute a conflict of interest, as there is no evidence that any of the conflicts Venkataram alleges adversely affected his lawyers' performance. See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980) ("In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.").

---

[5] Venkataram's claim that the District Court lacked jurisdiction to issue the forfeiture seizure warrants also fails, as the orders were enforceable to the extent that accounts were frozen. (Pet'r's Mem. at 88-89.)

Venkataram also alleges that his due process rights were violated when Mr. Shargel was permitted to withdraw from his representation.  This claim has no merit—Venkataram admits that he "concur[red] with Shargel's release" because "at that juncture Venkataram had no confidence in either Shargel's skill or devotion to his cause."  (Pet'r's Mem. at 34.)

Venkataram also alleges that the Court violated his due process rights when it denied his motion to suppress the physical evidence seized from his former OCME office.  (Pet'r's Mem. at 68-75.)  When this issue was litigated in an evidentiary hearing prior to Venkataram's guilty plea, this Court concluded that Venkataram had abandoned any reasonable expectation of privacy he might have had in the items that were seized at the time the search was conducted.  (Opinion and Order, Jan. 5, 2007, 06 CR 102, ECF No. 62.)  The Court stands by its conclusion in that opinion that the seizure of evidence from Venkataram's office did not constitute a constitutional violation.

Venkataram also raises various other deficiencies by his seven attorneys that he alleges constitute examples of ineffective assistance prior to guilty plea.  These include claims that Venkataram's attorneys failed to conduct an appropriate investigation of his criminal case; failed to review discovery material; failed to explain various developments; misrepresented the facts and the law; never approached the Government with an offer of substantial cooperation as directed by him; and failed to pursue a favorable disposition.  (Pet'r's Mem. at 7-36.) Venkataram fails, however, to support any of these claims with evidence demonstrating that any of his attorneys' performance was ineffective or that prejudice resulted.  There is no evidence that a more favorable disposition in this case was ever available to Venkataram, or that a different disposition would have been available had Venkataram's attorneys conducted themselves differently.  Thus, Venkataram's remaining claims for ineffective assistance of

11

counsel are all without merit.

Moreover, Venkataram waived his objections to the allegations discussed on this section, not only by pleading guilty, but also by failing to raise any of these issues on direct appeal. See Murray, 477 U.S. at 491 (failure to raise claim on direct appeal precludes § 2255 review unless cause is shown); id. at 488 (requisite cause must be based on "some objective factor external to the defense [that] impeded counsel's efforts"). Venkataram has not demonstrated adequate cause for his failure to raise these claims on appeal, nor has he demonstrated that failure to hear his claims would bring about a "fundamental miscarriage of justice." Id. at 495. Therefore, the claims addressed above are invalid grounds for § 2255 relief, in addition to having been waived by Venkataram's guilty plea and failing on the merits.

**2. Claims Relating to Guilty Plea**

Venkataram raises four claims related to his guilty plea. Each of these claims is raised for the first time in this petition, and therefore, each claim is procedurally barred from collateral attack. See id. at 491. Even were this not the case, Venkataram's claims related to the plea are all without merit. Venkataram first argues that his attorney failed to explain the nature of his plea allocution to him before he pleaded guilty. (Pet'r's Mem. at 41-42.) This claim contradicts Venkataram's own sworn statements made during the plea proceeding, which carry a strong presumption of validity. See Blackledge v. Allison, 431 U.S. 63, 74 (1977). When questioned by the Court, Venkataram testified that he had "very carefully" reviewed the written plea allocution, and that it was "true and accurate" to his knowledge. (Plea Hr'g at 27, Oct. 30, 2007.) These statements contradict Venkataram's claim that his attorneys did not give him an opportunity to review the plea allocution.

Venkataram also alleges that there was an insufficient factual basis for his guilty plea to

12

the money laundering counts in the indictment.  (Pet'r's Mem. 52-54.)  While Venkataram is correct that Rule 11 requires that a court determine that there is a factual basis for a plea before entering judgment, see Fed. R. Crim. P. 11(b)(3), this rule requires only that the court "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty."  United States v. Maher, 108 F.3d 1513, 1524 (2d Cir. 1997).  In this case, there were sufficient facts on the record—namely the Court's detailed description of the charges in the Indictment and Venkataram's admissions under oath—for the Court to reach this conclusion.  (See Gov't Mem. at 41.)

Venkataram also alleges that he did not commit the crime of money laundering, despite pleading guilty to the offense, because there was no attempt on his part to conceal or disguise nature, source, location, ownership, or control of proceeds.  (Pet'r's Mem. 42, 53-59.)  This claim is clearly disproven by Venkataram's plea allocution, in which he admitted to the concealment element of each of the money laundering counts against him.  (Plea Hr'g at 35-38.)  Venkataram further argues that this Court violated his due process rights by accepting his plea and his attorneys were ineffective in allowing him to plead guilty to the money laundering counts.  (Pet'r's Mem. at 76-79.)  Because the Court complied in all respects with Rule 11 and Venkataram knowingly and voluntarily acknowledged his guilt as to each of the money laundering counts in the Indictment, this claim also lacks merit.

### 3. Claims Relating to Sentencing

Venkataram raises a series of claims related to his sentencing.  First, he alleges that the Court improperly refused to permit Venkataram to call Muhammed Naseh as a witness at the Fatico hearing, and further, that his principal attorney at sentencing, Mr. Trabulus, was ineffective for failing to provide the Court with a written proffer as to Naseh's testimony and call

13

Naseh as a witness. Both of these claims are meritless. Venkataram's due process claim was raised on direct appeal and rejected by the Court of Appeals. Venkataram, 356 Fed.Appx. at 542. The Second Circuit's ruling is binding on this Court, and therefore cannot be relitigated in this § 2255 petition. See Sanin, 252 F.3d. at 83. Venkataram's ineffective assistance claim also fails, as there has been no evidence, beyond Venkataram's speculation, that Naseh's testimony would have impacted Venkataram's sentence or been helpful to Venkataram in any way. Without a showing of prejudice, this ineffective assistance claim has no merit.

Second, Venkataram alleges that his counsel failed to review and make objections to the presentence report. The record in this case shows that Venkataram's attorneys did object to various parts of the presentence report, both in writing and during the sentencing proceeding. (Letter, Feb. 18, 2008, 06 CR 102, ECF #698; Sentencing Hr'g at 121-27.) During the sentencing proceeding, Venkataram's attorney stated that he had reviewed the presentence report with Venkataram, and Venkataram did not dispute this assertion. (Sentencing Hr'g at 121.) Thus, the record contradicts Venkataram's claim that his counsel was ineffective for failing to review and object to the presentence report, and there is no evidence that attorney conduct related to the presentence report prejudiced Venkataram's case.

Third, Venkataram challenges the application of the abuse of trust, loss amount, and sophisticated laundering sentencing enhancements both on ineffective assistance and on due process grounds. (Pet'r's Mem. at 47-49, 50-51.) All of these claims are procedurally barred: Venkataram's claims regarding the loss amount and application of the abuse of trust enhancement were decided against him by the Court of Appeals, see Venkataram, 356 Fed. Appx. at 543, and therefore, cannot be relitigated; and Venkataram's challenge to the sophisticated money laundering enhancement was waived when Venkataram failed to raise the

issue in his appeal. Additionally, these claims are meritless. The abuse of trust enhancement was properly applied because significant evidence showed that Venkataram abused a position of trust in connection with the money laundering offenses; Venkataram conceded at sentencing that this enhancement applied. (See Sentencing Hr'g at 146.) The calculation of the loss amount was proper because it was determined reasonably based on the record and evidence presented. As the Court of Appeals confirmed, a "reasonable estimate of the loss" is all that the Guidelines require. Venkataram, 356 Fed. Appx. at 543; U.S.S.G. § 2B1.1, cmt. n. 3(C) (2004). There is no evidentiary support for Venkataram's ineffective assistance claims related to the loss amount, as there is no argument counsel could have made that would have resulted in a different loss calculation.

The sophisticated laundering enhancement, which Venkataram could have, but failed to raise on appeal, applies to an offense that "involved sophisticated laundering," U.S.S.G. § 2S1.1(b)(3) (2004), defined as "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense." U.S.S.G. § 2S1.1(b)(3), cmt. n.5 (2004). Because Venkataram's conduct involved multiple levels of transactions, transfers, shell companies, and offshore financial accounts, the enhancement was appropriate here. Thus, Venkataram's argument fails on the merits, in addition to being procedurally barred.

Venkataram also alleges that he was unfairly denied the third point for acceptance of responsibility in his sentencing. (Pet'r's Mem. at 82.) This claim is meritless because the Second Circuit has made it clear that "subject to . . . narrow limitations . . . a government motion is a necessary prerequisite to the additional one-level decrease under Guidelines § 3E1.1(b)." United States v. Sloley, 464 F.3d 355, 359 (2d Cir. 2006). Because filing a motion for this reduction is not a duty, but is within the discretion of the government, Venkataram was not

entitled to the third point for acceptance of responsibility and cannot challenge his sentence on this ground. Additionally, Venkataram raised this claim on appeal, and therefore, it cannot be relitigated in a § 2255 petition. See Venkataram, 356 Fed. Appx. at 544.

### 4. Claims With Respect to the Return of the $6.12 Million

Venkataram, in his initial submission, alleges that one of his attorneys—Mr. Neville—was ineffective for failing to inform the Court of Venkataram's efforts to recover the stolen $6.12 million from D.V.S. Raju so the Court could take that into consideration at sentencing. (Pet'r's Mem. at 86.) Like many of Venkataram's claims, Venkataram failed to raise this issue on appeal, and therefore, the claim is procedurally barred from § 2255 review. See Murray, 477 U.S. at 491. Additionally, Venkataram's claim contradicts the evidence this Court has reviewed, which indicates Venkataram played no significant role in the return of the $6.12 million. (See Gov't Mem. at 87; Gov't Mem. Ex. 4, "Dember Aff." at ¶4.) Because there is no evidence that Mr. Neville failed to share information with the Court that would have impacted Venkataram's sentence, this ineffective assistance claim fails.

In a supplemental memorandum in support of his § 2255 motion, Venkataram—for the first time though he could have raised these issues on direct appeal—raises additional claims related to the $6.12 million. He alleges that: (1) the Government deliberately withheld information from the Court about the return of the $6.12 million; (2) the Government misled the Court into believing that there were large sums of money left in India that Venkataram did not return; (3) D.V.S. Raju was "unjustly enriched" by being permitted to keep any earned interest on the $6.12 million; (4) D.V.S. Raju and Visualsoft Technologies were allowed to improperly benefit due to the variance in currency exchange rates; (5) D.V.S. Raju improperly benefited from the Gangavaram Port project; (6) the Government's failure to advise Venkataram of the

settlement agreement between Raju and the City of New York constituted a Rule 11 violation, rendering his guilty plea involuntary; and (7) his counsel failed to inform the Court of the settlement agreement. (Pet'r's Supplemental Mem. at 1-10.) Upon review, the Court finds these claims to be meritless. The claims raised by Venkataram simply do not rise to the level of "constitutional error, [] lack of jurisdiction in the sentencing court, or [] error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice" for which § 2255 relief was contemplated. See Bokun, 73 F.3d at 12.

### III. CORAM NOBIS PETITION

Venkataram also filed an action under 42 U.S.C. § 1987 seeking monetary damages from the government, (Compl., 11 CV 8005, ECF No. 1), which this Court interpreted as a coram nobis petition for review of errors concerning the Court's order of restitution. (Order to Answer at 2, ECF No. 8.)

#### A. Legal Analysis

Federal courts are authorized to grant the common law writ of error coram nobis under the terms of 28 U.S.C. § 1651(a). See United States v. Morgan, 346 U.S. 502 (1954). Coram nobis is a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus. Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998). The remedy is not a substitute for appeal, and "relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996).

#### B. Discussion

Because coram nobis relief is strictly limited to "errors of the most fundamental

character," Foont, 93 F.3d at 78, this claim has no merit.  The Court of Appeals has affirmed the amount of restitution in Venkataram's case as "a 'reasonable' estimation based on the record and evidence presented."  Venkataram, 356 Fed. Appx. at 543.

### C. CONCLUSION

For the reasons stated above, Venkataram's § 2255 Motion is DENIED, and Venkataram's request for an evidentiary hearing is also DENIED.  Venkataram's petition for a writ of error coram nobis is also DENIED.

IT IS SO ORDERED.

Dated: New York, New York
September 20, 2013

                          ___s/s_____
                             Robert P. Patterson, Jr.
                             U.S.D.J.